1  LAW OFFICES OF ALVIN L. PITTMAN
2  E-mail: office@apittman-law.com
   Alvin L. Pittman, Esq. (SBN. 127009)
3  9841 Airport Blvd., Suite 412
4  Los Angeles, CA  90045
   Telephone:  (310) 337-3077
5  Facsimile: (310) 337-3080

6
   Attorneys for Plaintiffs
7  Bridget C. Harper and Ludlow B Creary

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11 BRIDGET C. HARPER, as Trustee of      ) Case No.  2:15-cv-09939-AB(ASx)
   the Ludlow B Creary 2000 Irrevocable  )
12 Trust, and Ludlow B Creary, an        )
   Individual,                           )   FIRST AMENDED COMPLAINT
13                                        )       FOR DAMAGES:
                                          )
14              Plaintiffs,               )   1. FRAUD-INTENTIONAL
                                          )      MISREPRESENTATION;
15       vs.                              )
                                          )   2. BREACH OF THE IMPLIED
16                                        )      COVENANT OF GOOD FAITH
   NATIONWIDE LIFE INSURANCE             ) AND FAIR DEALING;
17 COMPANY AND DOES 1 THROUGH            )
   25, INCLUSIVE,                         )   3.  BREACH OF CONTRACT;
18                                        )
                Defendants.               )   4.  VIOLATION OF CALIFORNIA
19                                        ) UNFAIR COMPETITION LAW:
                                          )   BUSINESS & PROFESSIONS CODE
20                                        ) § 17200.
                                          )
21                                        )
                                          )
22                                        )       (Jury Trial Demanded)
                                          )
23                                        )
                                          )
24                                        )
   _____)
25

26                        The Parties

27       1.  Plaintiffs, BRIDGET C. HARPER, Trustee of the Ludlow B Creary 2000

28 Irrevocable Trust, and Ludlow B Creary, an Individual and insured or former

1  insured of Nationwide Life Insurance Company, are adult residents of the City and
2  County of Los Angeles, and the State of California.  **The Ludlow B. Creary 2000**
3  **Irrevocable Trust is the owner of the life insurance policy issued on the life of**
4  **Dr. Ludlow B. Creary that is at issue in this action.**

5      2.      Defendant, NATIONWIDE LIFE INSURANCE COMPANY, is a
6  business entity operating throughout America, including throughout the State of
7  California, providing life insurance coverage to consumers for premium payments.

8      3.      Each of the fictitious defendants Does 1 through 25, inclusive, are sued
9  pursuant to Code of Civil Procedure Section 474, because Plaintiff does not know
10 their names and/or capacities at this time.  Plaintiffs will seek leave of the court to
11 amend this complaint when the true names and capacities of the defendants
12 designated herein as "Does" have been ascertained.

13

14                          **A. BACKGROUND FACTS**

15      4.      Plaintiff, Dr. Creary, is 84 years old as the time filing of this action.

16      5.      Dr. Creary is a retired physician who served as the Chair of the King-
17 Drew, UCLA Department of Family Medicine during his work life.

18      6.      About 25 years ago, Dr. Creary took out a Universal Life Insurance
19 Policy that was sold to him as an investment.

20      7.      This Universal Life Insurance Policy provided for a death benefit of
21 one million, five hundred thousand dollars ($1,500,000.00)

22      8.      During the course of this 25 year period, Dr. Creary faithfully paid the
23 monthly premiums due under the policy despite the fact that the premiums escalated
24 significantly over the years.

25      9.      During the course of this 25 year period, Dr. Creary enjoyed the
26 security of knowing that in return for his commitment and loyalty to Defendant
27 Nationwide, as he grew older and his health condition changed, his life would be
28 insured to yield assistance to and a livelihood for his heirs.

10.     During the course of this 25 year period, Dr. Creary had a number of health issues that included prostate cancer in 1998, and bladder and colon cancer in 2005.

11.     During the course of this 25 year period, Dr. Creary continued to pay the insurance premiums for his life insurance policy with the Defendant despite his health challenges.

12.     In 2010, due to out-of-control escalation in monthly premiums that had no cap (or maximum increase), a lawsuit was filed, ending in settlement.

### B.     OPERATIVE FACTS OF PRESENT CLAIMS

13     In 2012, Dr. Creary's monthly insurance premiums were again spiking.

14.     By October, 2012, the monthly premium had risen to over $9,000, and Dr. Creary was financially strained and unable to pay.

15.     Dr. Creary, having paid some $900,000.00 in premium payments over the 25 year life of the policy, was unable to pay in October and November, 2012, but undertook to locate funds to maintain his coverage.

16.     For the 61 day period ending November 5, 2012, Defendant Nationwide reported that the "net cash surrender value" was not sufficient to cover the monthly cost of the insurance, and that the premiums due were $26,384.37, and demanded immediate payment.

17.     On January 3, 2013, Dr. Creary requested an illustration.

18,     Defendant Nationwide failed and refused to provide Plaintiffs with the requested illustration, reportedly because the policy was pending lapse.

19.     On January 4, 2013, Dr. Creary again contacted Defendant about taking steps to save his life insurance coverage, **speaking to a Shelia Fraizer Mozie, who identified herself and Defendant's Customer Service Supervisor.**

20.     On January 4, 2013, Defendant, through its agent, **Robert Weiss (officially identified on Defendant's letterhead as "Team Lead"), orally told Dr. Creary that his policy payments had fallen behind and requested payment by**

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

1 **January 7, 2013.   (On this date and earlier, Plaintiff also spoke with Mozie on**
2 **regarding this same topic.)**

3    21.    Dr. Creary, in his ill and aged condition, was put under enormous
4 pressure by Nationwide to come up with and pay over $ 26,000 in just four (4) days.

5    22.    Nationwide threatened Dr. Creary that if he did not pay the full amount
6 due on the policy, there was no guarantee that the policy would not lapse.

7    23,    Dr. Creary, **having liquid resources in sufficient amount to pay the**
8 **premium but wanting to be cautious with expenditures,** indicated that he would
9 like to send in a substantial partial payment to keep his policy and make the
10 remaining payment shortly thereafter.

11    24.    Nationwide was non-committal in response to Dr. Creary's offer.

12    25.    On **or about** January 7, Dr. Creary, **in separate and different**
13 **conversations,** again spoke to Nationwide's agent/representative, **Robert Weiss**
14 **and Shelia Fraizer Mozie,**  trying to keep the insurance policy in force, offering to
15 pay $10,000.00 immediately and the balance shortly thereafter.

16    26.    Nationwide, **through its agents Robert Weiss and Shelia Fraizer**
17 **Mozie,** were non committal to Dr. Creary's offer, and **both, individually and in**
18 **different conversations,** told Dr. Creary orally that the policy **was scheduled to**
19 **lapse at midnight on January 7, 2013, and** that the best route for him **to take** was
20 to just let the current policy lapse and all that he would have to do **to have it**
21 **reinstated** was apply for reinstatement. **Weiss,** said that he would provide the
22 appropriate forms for Plaintiff **Dr.** Creary to accomplish reinstatement.

23    **27.    Also on or about January 7, Dr. Creary also telephoned to**
24 **Defendant's offices and spoke to Defendant's agent, Sheila Frazier Mozie, the**
25 **Customer Service Supervisor, who reiterated that the best route was to let the**
26 **policy lapse and all Dr. Creary would have to do to achieve reinstatement of the**
27 **policy was simply to apply for reinstatement of his policy. (Mozie also told**
28 **Plaintiff Dr. Creary that when he was ready, he could have the $1,500,000**

M
                                    4
**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

1  **policy reinstated or have them, the Insurer, reinstate the coverage at a lower**
2  **amount, by simplying sending in the application for reinstatement.  She said**
3  **that this flexibility was ideal for him and that he should just let the written**
4  **policy lapse and the reapply and it would be reinstated at whatever level he**
5  **selected.)**

6  **28.     When Dr. Creary telephoned Nationwide to address the issues he**
7  **had with the insurance policy, he had reason to believe that the persons to**
8  **whom he was directed to address the problem (Weiss and Frazier Mozie) were**
9  **authorized to speak for Defendant Insurer relative to the matters that he**
10 **discussed.**

11 29.     Defendant Nationwide knew that Plaintiff was, at that time, 82 years of
12 age, and that he was an individual who was treating for prostate and bladder cancer.

13 30.      Defendant Nationwide, itself, had previously determined that Dr.
14 Creary was not eligible for an increase in his insurance coverage, because some 15
15 years earlier, Dr. Creary applied for increased life insurance coverage with
16 Nationwide and was denied for health related reasons.

17 31.     Defendant Nationwide knew of Dr. Creary's health condition and
18 history, even as it, through its agents **identified above**, told Plaintiff Creary that the
19 best option was for him to allow his current policy to lapse and then apply for
20 reinstatement, implying that such would be available to Plaintiff Creary.

21 32.     Defendant Nationwide knew that if it placed Dr. Creary's policy in
22 lapse status and encouraged him to apply for reinstatement, it would thereafter deny
23 him reinstatement due to facts known to it at the time that it, through its agents,
24 advised Plaintiff Creary to allow the policy to lapse, namely pre-existing medical
25 condition and age.

26 33.     Defendant Nationwide deceptively ousted Dr. Creary from the life
27 insurance policy that he has had for some 25 years and for which he has paid over
28 $900,000.00, by inducing him to allow it to lapse in order to rid itself of the

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

$1,500,000.00 obligation to be incurred by it upon Dr. Creary's death **and in retaliation for his having exercised his rights as an insured and consumer by previously filing suit against Nationwide.**

34.     Defendant Nationwide quietly accepted the benefits of premium payments from Dr. Creary for over 25 years total, and for some 15 years after concluding that his health condition rendered him ineligible for an increase in coverage, then took undue advantage of his age and  infirmities to rob him of the fruits and satisfaction of his payment loyalty and diligence.

35.     On January 7, 2013, Defendant Nationwide lapsed Dr. Creary's life insurance policy and thereafter sent him notice of lapse.

36.     Traumatized by the thought of being uninsured after investing so much for so long and now aged and with well-managed health challenges, around January 20, 2013, in panic mode, Dr. Creary sent in an application for reinstatement after receiving notice of policy lapse.

37.     No meaningful or noteworthy change occurred in Dr. Creary's health between the date of lapse on January 7, 2013 and January 20, the date that he, in good faith, sought reinstatement.

38.     Dr. Creary asked Nationwide to reinstate him without necessity of underwriting review in light of the fact that Nationwide had access to a complete file on his health; Nationwide had reason to know that the risk level presented by insuring the life of Plaintiff Creary was not different than it had been a week or so earlier; and, Nationwide knew that if it reviewed Plaintiff Creary as a new applicant with whom it had no past relationship, it would not offer him a policy.

39.     In further effort to follow the advice of Nationwide's agent, Dr. Creary even submitted an electronic application for reinstatement, seeking to cover all bases.

40.     By letter dated March 20, 2013, Defendant Nationwide notified Dr. Creary that his application for reinstatement of coverage was declined due to

medical information.

41.    Dr. Creary's medical condition at the time of his application for reinstatement was essentially unchanged from what it was, or had been, at the time that he was advised by Nationwide's agents, **Robert Weiss and Sheila Frazier Mozie,** to allow Defendant Nationwide to place his policy in lapse status.

**42.    On May 16, 2013, Nationwide's Agent, Robert Weiss, wrote to Plaintiffs recounting some of the communication history, including that fact that communications between Plaintiff Creary and Weiss occurred on January 4 and January 7.**

43.    Dr. Creary was, and continues to be, traumatized and deeply distressed over Defendant Nationwide's actions.

44.    Dr. Creary was made to feel helpless, and feels that Defendant Nationwide has taken undue advantage of him because of his advanced age and his infirm health, which it knew about for many of the years during which it happily accepted his insurance premiums.

45.    Defendant Nationwide, as an insurer, owed Dr. Creary a duty of good faith and fair dealings, arising from the insurance agreement and the longstanding Insurer-Insured relationship providing for life insurance coverage.

46.    The good faith due and owing to Dr. Creary included the duty to avoid engagement in any action to injure the rights of the Insured; to avoid misleading the Insured by making false and/or misleading statements resulting in injury to the Insured's rights and interests; and, to  provide Dr. Creary with life insurance coverage pursuant to his longstanding insurance policy by offering reinstatement in good faith, so long as no material changes occurred the interim between lapse and reinstatement.

47.    Defendant Nationwide also owed Dr. Creary the duty of truthful and honest dealings.

48.    Defendant Nationwide, as an insurer, owed Dr. Creary the duty of fair

1  dealings and fairness in light of the totality of circumstances, precluding it from

2  taking any actions that would harm the rights of Dr. Creary and its Insured.

3    49. Defendant Nationwide, as an insurer, owed Dr. Creary the duty to give

4  as much consideration to his interests as the insured, as it gives to its own interests.

5    50. Defendant Nationwide, as an insurer, owed Dr. Creary the duty of

6  reasonableness.

7    51. Defendant Nationwide, as an insurer, willfully breached its duties to

8  Dr. Creary by taking actions designed to rob him of the benefits of life insurance

9  after accepting some $900,000.00 in premiums from him for over a 25 year period.

10    52. By the above-described actions, and by other conduct, Defendant

11  Nationwide engaged in unfair and deceptive acts and practices in its dealings with

12  Plaintiff Creary, and committed Insurance Bad Faith in violation of Insurance Code

13  Section 790.03 et. seq,

14    53. Defendant Nationwide's actions have been and continue to be a direct

15  and proximate cause of ongoing severe injury and harm to Dr. Creary and his loved

16  ones, including, but not limited to severe mental and emotional distress.

17    54. Plaintiff seeks the recovery of economic and non-economic damages

18  against Defendant Nationwide for the injuries, losses, damages and harm its actions

19  and conduct caused, and continues to cause, him.

20    55. The above-referenced actions and conduct engaged in by Defendant

21  Nationwide evidence fraud, malice and oppression, and were engaged in, condoned,

22  approved or ratified by managing agents of Defendant.

23    56. Defendant Nationwide's actions set forth herein are reprehensible and

24  injurious to Plaintiffs and the public generally, and Plaintiffs seek punitive damages

25  against Defendant Nationwide to deter such outrageous, malicious, fraudulent and

26  oppressive action by it in the future.

27    57. Defendant, by misleading Plaintiff Creary, took undue advantage of

28  Plaintiffs, placed its interests as the insurer ahead of Plaintiffs interest and willfully

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

1  undertook actions to rob the Plaintiffs of the benefits due under the insurer/insured
2  relationship and the long existing death benefit insurance policy.

3        58.    Defendant promised, then unreasonably denied Plaintiffs the benefit of
4  reinstatement, fully aware of Dr. Creary's medical history at the time of the promise
5  and, upon information and belief, fully intent on denying him reinstatement at the
6  time that it was offered as an option.

7
8                    **COUNT ONE: FRAUD-INTENTIONAL**
                     **MISREPRESENTATION**
9

10       59.    Plaintiff fully incorporates the claims of Paragraphs 1 THROUGH 58,
11 to apply here.

12       60.    Defendant Nationwide, as an insurer, owed Dr. Creary a duty of good
13 faith, arising from the insurance agreement and the longstanding Insurer-Insured
14 relationship providing for life insurance coverage.

15       61.    The good faith due and owing to Dr. Creary included the duty to
16 provide him with life insurance coverage pursuant to his longstanding insurance
17 policy, by offering reinstatement in good faith, so long as no material changes
18 occurred in the interim between lapse and reinstatement.

19       62.    Defendant Nationwide also owed Dr. Creary the duty of truthful and
20 honest dealings.

21       63.    Defendant Nationwide, as an insurer, owed Dr. Creary the duty of fair
22 dealings and fairness in light of the totality of circumstances, precluding it from
23 taking any actions would harm him.

24       64.    Defendant Nationwide, as an insurer, owed Dr. Creary the duty to give
25 as much consideration to his interests as the insured, as it gives to its own interests.

26       65.    Defendant Nationwide, as an insurer, owed Dr. Creary the duty of
27 reasonableness.

28       66.    Defendant Nationwide, as an insurer, **through its agents Robert**

M
                                          9
**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

**Weiss, (officially identified on Defendant's letterhead as "Team Lead"), and Sheila Frazier Mozie, Customer Service Supervisor, through oral telephonic communications with Dr. Creary on or about January 7, 2013,** willfully engaged in actions designed to rob Dr. Creary of his life insurance policy and its benefits, by deceptively inducing him to allow his policy to lapse representing that he could apply for reinstatement, when it knew in advance that it would not accept Dr. Creary for reinstatement.

67.     With knowledge that it considered and had previously decided that Dr. Creary was not insurable, Defendant Nationwide, in order to extricate itself from the obligation of an eventual $1,500,000.00 payout obligation, took undue advantage of the advanced age and health infirmities of Dr. Creary and misled him by suggesting that an empty right (under the circumstances) would be of benefit to him, knowing all the time that it was merely pretext.

**68.     Dr. Creary believed and justifiably relied on the representations of Nationwide's agents by letting the policy lapse, while, at the time Nationwide's agents told him to let the policy lapse, Dr. Creary had available liquid resources in an amount sufficient to pay the full amount of premiums due on the policy (although of great concern and burden), and absent presentation of what presented as a reasonable and viable option offered by Defendant, through its agents, would have paid, but was guided by Defendant to let the policy lapse; but for the misrepresentations of Defendant's agents, Dr. Creary would have fully paid the premiums necessary to maintain the policy.**

69.     By the above-described actions, and by other conduct, Defendant Nationwide committed Fraud and Misrepresentation to rob Dr. Creary of insurance benefits and to unjustly free itself of the obligation for which Dr. Creary paid over $900,000.00 during the course of some 25 years.

70.     Defendant Nationwide's actions have been and continue to be a direct and proximate cause of ongoing severe injury and harm to Dr. Creary and his loved

ones, including, but not limited to severe mental and emotional distress.

71.     Plaintiff seeks the recovery of economic and non-economic damages against Defendant Nationwide for the injuries, losses, damages and harm, its actions and conduct caused, and continues to cause, him.

72.     The above-referenced actions and conduct engaged in by Defendant Nationwide evidence fraud, malice and oppression, and were engaged in, condoned, approved or ratified by managing agents of Defendant.

73.     Defendant Nationwide's actions set forth herein are reprehensible and injurious to Plaintiff and the public generally, and Plaintiff seeks punitive damages against Defendant Nationwide to deter such outrageous, malicious, fraudulent and oppressive action by it in the future.

74.     Plaintiff further seeks the recovery of all attorney fees necessitated by Defendant's actions which created the need for legal assistance.

## COUNT TWO:  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

75.     Plaintiff fully incorporates the claims of Paragraphs 1 THROUGH 58 to apply here.

76.     Defendant Nationwide, as an insurer, owed Dr. Creary a duty of good faith, arising from the insurance agreement, the California Insurance Code, and the longstanding Insurer-Insured relationship providing for life insurance coverage between Plaintiff Creary and Defendant Nationwide.

77.     The good faith due and owing to Dr. Creary included, but was not limited to, the duty to provide him with life insurance coverage pursuant to his longstanding insurance policy, by avoiding the making of false and/or misleading statements to Plaintiff Creary, and by offering him reinstatement, in good faith, so long as no material changes occurred in the interim between lapse and reinstatement.

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

78.     Defendant Nationwide also owed Dr. Creary the duty of truthful and honest dealings.

79.     Defendant Nationwide, as an insurer, owed Dr. Creary the duty of fair dealings and fairness in light of the totality of circumstances, precluding it from taking any actions that would harm him.

80.     Defendant Nationwide, as an insurer, owed Dr. Creary the duty to give as much consideration to his interests as the insured, as it gives to its own interests.

81.     Defendant Nationwide, as an insurer, owed Dr. Creary the duty of reasonableness.

82.     Defendant Nationwide, as an insurer, willfully engaged in actions designed to rob Dr. Creary of his life insurance policy and its benefits, by deceptively inducing him to allow his policy to lapse representing that he could apply for reinstatement, when it knew in advance that it would not accept Dr Creary for reinstatement.

83.     With knowledge that it considered and had previously decided that Dr. Creary was not insurable for increased death benefits, Defendant Nationwide, in order to extricate itself from an eventual $1,500,000.00 payout obligation and in retaliation for his having previously filed a lawsuit against it, took undue advantage of the advanced age and health infirmities of Dr. Creary and misled him by advising him that allowing his policy to lapse and thereafter seek reinstatement was his best option(under the circumstances), knowing all the time that it was merely a pretext for getting rid of the underlying death benefit covering Dr. Creary.

84.     By the above-described actions, and by other conduct, Defendant Nationwide committed Breach of the Implied Covenant of Good Faith and Fair Dealing (operative in both contract and imposed upon Defendant by the California Insurance Code), robbing Dr. Creary of insurance benefits and unjustly freeing itself of the obligation for which Dr. Creary paid over $900,000.00 during the course of some 25 years.

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

85.     Defendant Nationwide's actions have been and continue to be a direct and proximate cause of ongoing severe injury and harm to Dr. Creary and his loved ones, including, but not limited to severe mental and emotional distress.

86.     Plaintiff seeks the recovery of economic and non-economic damages against Defendant Nationwide for the injuries, losses, damages and harm, its actions and conduct caused, and continues to cause, him.

87.     The above-referenced actions and conduct engaged in by Defendant Nationwide evidence fraud, malice and oppression, and were engaged in, condoned, approved or ratified by managing agents of Defendant.

88.     Defendant Nationwide's actions set forth herein are reprehensible and injurious to Plaintiff and the public generally, and Plaintiff seeks punitive damages against Defendant Nationwide to deter such outrageous, malicious, fraudulent and oppressive action by it in the future.

89.     Plaintiff further seeks the recovery of all attorney fees necessitated by Defendant's actions which created the need for legal assistance.

## COUNT THREE:  BREACH OF WRITTEN CONTRACT AGAINST DEFENDANT AND DOES 1 THROUGH 20, INCLUSIVE.

**90.     The allegations of Paragraphs 1 through 89, above, are incorporated herein by reference.**

**91.     Plaintiffs and Defendant were parties to a written "whole life" insurance policy covering the life of Plaintiff Ludlow B. Creary for the benefit of the Ludlow B. Creary 2000 Irrevocable Trust.**

**92.     This written agreement provided for a one and one-half million dollars ($1,500,000.00) death benefit on the life of Ludlow B. Creary, payable to**

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

the Ludlow B. Creary 2000 Irrevocable Trust, in consideration of the payment of premiums during the lifetime of Ludlow B. Creary.

93.   Under this written agreement, Plaintiffs were required to maintain the policy in full force and effect by the payment of premiums due, in order to trigger the death benefit obligation of Defendant, at the death of Ludlow B. Creary.

94.   In late 2012 and leading into early 2013, the premiums that were due to be paid by Plaintiffs to keep the "whole life" policy in force, skyrocketed, causing Plaintiffs financial concerns and difficulty, notwithstanding their ability to pay, absent reasonable options.

95.   During an earlier attempt to increase the amount of the death benefit covering the life of Ludlow B. Creary, several years earlier, Plaintiffs had learned that, because Dr. Creary had cancer and was aged, Defendant did not consider him insurable for increased death benefit.

96.   Given this knowledge, although very concerned about, and taxed by, the escalation of premiums that they were required to pay to maintain the policy in full force and effect, Plaintiffs preceded cautiously, trying to avoid taking any actions which would jeopardize the insurance coverage on the life of Plaintiff Dr. Creary.

97.     Plaintiffs made Defendant aware that the escalation of premiums that they were required to pay to maintain the policy in full force and effect, was of great concern and taxing to them.

98.     Defendant promptly seized upon Plaintiffs announced concerns about the financial burden of the increased premium demands, and undertook to extricate itself from the monetary obligation to pay a $1,500,000.00 death benefit to Plaintiff Trust on the death of the aged and ill Plaintiff Dr. Creary, by misleading Plaintiffs to allow the policy to lapse, promising that Plaintiffs could have it reinstated by simply making a written request for same at the time that suited them.

99.     Plaintiffs acted as they were directed by Defendant, allowing the policy to facially lapse and, about two weeks later, applying for reinstatement with financial readiness and willingness to pay whatever premium demanded by Defendant as then due.

100.    Defendant failed and refused to reinstate Plaintiffs' insurance policy providing for a death benefit in the amount of $1,500,000.00 (or in any other amount), claiming that the life of Plaintiff Dr. Creary was not insurable.

100.    Defendant's managing agents, with knowledge that Defendant's agents had encouraged and guided Plaintiffs to allow the written insurance policy to lapse, condoned, adopted and ratified the actions of Defendant which

1   denied Plaintiffs reinstatement of the written policy of insurance on the claim

2   that the life of Plaintiff Dr. Creary was not insurable.

3       **101.   Defendant's actions as set out herein above, constitutes a material**

4   **breach of  contract causing injuries, damages, losses and harm to Plaintiffs .**

5

6       **102.   That as a direct and proximate cause of Defendant's actions set**

7   **forth above, Plaintiffs did in fact suffer, and continues to suffer severe**

8   **economic and non-economic losses, wherefore, Plaintiffs seek economic and**

9   **non-economic damages according to proof at trial, together with prejudgment**

10  **interest pursuant to Civil Code Section 3287, 3288 and/or 3291.**

11

12

13

14      **COUNT FOUR:   (California Unfair Competition Law, Cal. Bus.**

15  **& Profs. Code §§ 17200, *et. seq.*)**

16

17      103.   Plaintiff incorporates Paragraphs 1 through **102** as alleged above.

18      104.   The foregoing conduct, as alleged, violates the California Unfair

19  Competition Law ("UCL"), Cal.Bus. & Prof. Code § 17200 *et. seq.*  Section 17200

20  of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, *inter*

21  *alia*, any unlawful or unfair business acts or practices.

22      105.   Defendant committed acts of unfair competition, as defined by the

23  UCL, by engaging in the unlawful acts and practices described herein, and

24  therefore are also in violation of the UCL.  Defendant has violated said laws by

25  engaging in and continuing to engage in a pattern or practice of wrongfully

26  depriving consumers of insurance benefits and rights.  These unlawful acts violate

27  both the "unlawful" and "unfair" provisions of Section 17200 and public policy,

28  because such acts have an unjustified, adverse, and significant financial impact on

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

the Plaintiffs in this action and the entire population of insurance consumers and sales competitors.

106.   Defendant employed misleading actions to extricate itself from a $1,500.000 future obligation to the Plaintiffs, in violation of California laws, which constitutes a separate and independent violation of the UCL.  Defendant's conduct described herein violates the policy and/or spirit of such laws, or otherwise significantly threatens or harms competition.

107.   The harm to Plaintiffs, of being robbed of their insurance benefits for the security of the future, outweighs the utility, if any, of the Defendant's policies or practices and, therefore, Defendant's actions, described herein, constitute an unfair business practice or act within the meaning of the UCL.

108.   Plaintiffs request and seek full and complete relief as hereinafter provided, including cessation of the policies, practices and conduct, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendant as follows:

1.   For Non-Economic damages for losses resulting from humiliation, mental anguish, and severe emotional distress, according to proof;

2.   For Economic damages, according to proof;

4.   For Punitive Damages to deter and/or prevent such actions and conduct from occurring in the future.

3.   For pre-judgment interest on the gross amount of all damages (economic and non economic);

4.   For costs of suit and reasonable attorney's fees to the full extent allowable by applicable law.

5.   For such other damages which may be proved at the time of trial, and

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

such other damages as the court deems proper under law in this action.

Respectfully submitted,

DATED: February 29, 2016          LAW OFFICES OF ALVIN L. PITTMAN

                                By:   /s/ Alvin L. Pittman
                                      Alvin L. Pittman (SB #127009)
                                      Email: office@apittman-law.com
                                      Attorneys for Plaintiffs
                                      Bridget C. Harper, as Trustee of the Ludlow
                                      B. Creary 2000 Irrevocable Trust, and
                                      Ludlow B. Creary
                                      LAW OFFICES OF ALVIN L. PITTMAN
                                      9841 Airport Boulevard, Suite 412
                                      Los Angeles, CA  90045
                                      Tele. (310) 337-3077
                                      Fax.: (310) 337-3080

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

1

**DEMAND FOR JURY TRIAL**

2

3

    Plaintiffs hereby demand a trial by jury on all counts and claims in this action.

4

5

6    DATED: February 29, 2016          LAW OFFICES OF ALVIN L. PITTMAN

7

8                         By:    /s/ Alvin L. Pittman
9                                Alvin L. Pittman (SB #127009)
                                 Email: office@apittman-law.com
10                               Attorneys for Plaintiffs
11                               Bridget C. Harper, as Trustee of the Ludlow
                                 B. Creary 2000 Irrevocable Trust, and
12                               Ludlow B. Creary
13                               LAW OFFICES OF ALVIN L. PITTMAN
                                 9841 Airport Boulevard, Suite 412
14                               Los Angeles, CA  90045
                                 Tele. (310) 337-3077
15                               Fax.: (310) 337-3080

16

17

18

19

20

21

22

23

24

25

26

27

28
M

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**

Certificate of Electronic Service

I hereby certify that on this 29th day of February, 2016, I electronically filed a true and correct copy of the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES with the Clerk of Court using the Court's CM/ECF system, which will automatically send email notification of electronic filing to the following attorneys for defendant: John L. Viola, at jviola@thompsoncoburn.com and to Diana A. Sanders, at dsanders@thompsoncoburn.com, both of Thompson Coburn, LLP., 2029 Century Park East, Suite 1900, Los Angeles, CA  90067.

/s/ Alvin L. Pittman
By: ALVIN L. PITTMAN (SB#127009)
Attorney for Plaintiffs
E-mail: office@apittman-law.com

**FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL**